1
2
3
4

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

5

6
7
8
9
10

MARY K.,

                    Plaintiff,

        v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

Case No. 3:22-cv-05918-TLF

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

11
12

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

13 defendant's denial of plaintiff's application for supplemental security income ("SSI") and

14 disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of

15 Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this

16 matter heard by the undersigned Magistrate Judge. Dkt. 4. Plaintiff challenges the ALJ's

17 decision finding that plaintiff was not disabled. Dkt. 7, Complaint.

18        Plaintiff filed her applications in March 2019 and alleged an onset date of May

19 19, 2016. AR 25. She appealed the Commissioner's denial of her application and

20 Administrative Law Judge (ALJ) Gerard Langan held a hearing on June 24, 2021. AR

21 185-218. The ALJ published a decision on September 14, 2021, finding that plaintiff did

22 not meet the criteria for disability. AR 22-45.

23        In the ALJ's decision, plaintiff was found to have the following severe

24 impairments: depression, anxiety, posttraumatic stress disorder, substance abuse

25

disorder, degenerative disc disease of the cervical spine, plantar fasciitis, macular

degeneration, fibromyalgia, degenerative disc disease of the lumbar spine, and

migraine headaches. AR 28. The ALJ assessed her residual functional capacity (RFC,

see AR 30-31), and found plaintiff would not be able to perform previous relevant work

(at step four), but she would be able to perform work in the future such as being a

housekeeper, garment sorter, or assembler; therefore, at step five, the ALJ found

plaintiff to be not disabled. AR 38-40.

The ALJ found that plaintiff had the RFC to perform light work, but that she would

be required to "avoid unprotected heights and industrial machinery. The claimant must

avoid climbing ladders and scaffolds. The claimant can occasionally climb ramps and

stairs. The claimant can tolerate occasional exposure to extreme cold temperatures and

vibration. The claimant should avoid exposure to noise above level 3 noise intensity

level. The claimant can frequently use her right hand for handling and fingering. The

claimant is able to understand, retrain and carry out simple instructions with few

workplace changes. The claimant can engage in occasional decision-making. The

claimant should avoid interaction with public, except for incidental contact. The claimant

can occasionally interact with co-worders. The claimant should avoid fast production

rate pace." AR 30-31.

## DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of Social Security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such

1  relevant evidence as a reasonable mind might accept as adequate to support a

2  conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

3  omitted). The Court must consider the administrative record as a whole. *Garrison v.*

4  *Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). If evidence the ALJ reviewed in a Social

5  Security case would be "susceptible to more than one rational interpretation, we are

6  required to affirm." *Attmore v. Colvin,* 827 F.3d 872, 875 (9th Cr. 2016).

7          The Court also must weigh both the evidence that supports and evidence that

8  does not support the ALJ's conclusion. *Garrison,* 759 F.3d at 1009. The Court may not

9  affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather,

10 only the reasons identified by the ALJ are considered in the scope of the Court's review.

11 *Id.*

12      **1. Medical evidence.**

13 Plaintiff challenges the ALJ's decision finding that Dr. Alysa Ruddell's opinion (AR

14 626-630, opinion dated 6-14-2016), Dr. William Wilkinson's opinion (AR 631-639,

15 opinion dated 2-6-2019), and ARNP Armstrong's opinion (AR 640-642, opinion dated 2-

16 7-2019), were each unpersuasive. Dkt. 18, Opening Brief of Appellant, at 3-12.

17          The ALJ found that each of these medical opinions was inconsistent with the

18 physical and mental examinations in the longitudinal record. AR 35-37.

19 The Court applies the medical evidence regulations adopted in March 2017 to this

20 case because plaintiff filed her application for benefits in March 2019. AR 25. Under the

21 2017 regulations, the Commissioner "will not defer or give any specific evidentiary

22 weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical

23 sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain

24

25

1    with specificity how they considered the factors of supportability and consistency in

2    evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

3        The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th 785

4    (9th Cir. 2022). The Court found that "the requirement that ALJ's provide 'specific and

5    legitimate reasons'[1] for rejecting a treating or examining doctor's opinion…is

6    incompatible with the revised regulations" because requiring ALJ's to give a "more

7    robust explanation when discrediting evidence from certain sources necessarily favors

8    the evidence from those sources."  *Id*. at 792. Under the 2017 regulations,

9        an ALJ cannot reject an examining or treating doctor's opinion as
10       unsupported or inconsistent without providing an explanation supported by
         substantial evidence. The agency must "articulate ... how persuasive" it
11       finds "all of the medical opinions" from each doctor or other source, 20
         C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability
         and consistency factors" in reaching these findings, *id*. § 404.1520c(b)(2).
12   *Id*.

13       In this case, the ALJ's assessment is supported by substantial evidence, and is

14   supported by at least one legally valid reason.

15       With respect to plaintiff's mental health impairments, plaintiff indicated when

16   discussing her condition with a treatment provider in January of 2020, that she started

17   treatment for mental conditions as a child, after having been severely neglected,

18   sexually abused multiple times ["birth to 10", AR 1349], being removed from her parents

19   by child protective services, and being adopted, where she was again sexually abused

20   and then placed in foster care at age 16. AR 1347-1353. In April 2016, she presented to

21   Mason General Hospital, Emergency Department and was seen by Dr. Marc Reiswig

22

23   _____

     [1] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate
24   reasons").

25                                               4

due to neck pain – she reported that her spouse strangled her. AR 603-606. As a follow up to this emergency room visit, plaintiff established care with KC Graham, PA-C; notes from that appointment show a diagnosis of depression, anxiety, and fibromyalgia. AR 623-626. During June 2016, plaintiff started substance use disorder treatment with Jan Soloy, ARNP. AR 509-513. In August 2016 she stated she was homeless; at that time, plaintiff started seeing mental health professional, Ruth Muura, MA LMHC. AR 501.

Plaintiff was hospitalized with meningitis in late August 2016, AR 740-742. She was diagnosed with chronic migraines, and with a cervical spine condition in February 2019. AR 659-689. She struggled with mental health conditions from late 2016 through the date of the ALJ hearing; plaintiff's care providers worked with her to manage medications and counseling and the record shows the symptom management was consistent, despite a downturn in December 2018 (hospitalized for drug use and psychosis) and a severe trauma in May 2019 (hospitalized for sexual assault). See e.g., AR 1133-1147, 1197-1198, 1223-1224, 1295-1359, 1524-1526, 1550-1646.

The ALJ included appropriate mental health-related limitations in the RFC. An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054-1056 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id* at 1052, 1054*; see also, Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished).

The Vocational Expert (VE) testified, based on the ALJ's hypothetical, the hypothetical person would be able to perform light work, in unskilled occupations. AR 210-216. Because the ALJ included relevant limitations in the RFC for plaintiff's mental health symptoms – i.e., an unskilled occupation, not at a fast "assembly line" production rate, and very limited interaction with others – the ALJ did not err with respect to the assessment of the opinions of Dr. Ruddell or Dr. Wilkinson.

With respect to the physical limitations opined by ARNP Armstrong, the Court finds the ALJ harmfully erred by not including limitations relating to plaintiff's headache symptoms and work-related limitations associated with recurring headaches. It is unclear whether these headaches were connected with other elements of plaintiff's conditions, for example, whether the cervical spine degeneration (noted in ARNP Armstrong's opinion, AR 641 – MRI of neck, and neck pain) may have been connected to headaches. But the ALJ did not err with respect to other physical or mental conditions described in ARNP Armstrong's assessment. The longitudinal medical record is discussed below, concerning plaintiff's subjective symptoms.

## 2.  Plaintiff's statements regarding subjective symptoms

The ALJ's determinations regarding a claimant's statements about limitations "must be supported by specific, cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)).   In assessing a Plaintiff's credibility, the ALJ must determine whether Plaintiff has presented objective medical evidence of an underlying impairment. If such evidence is present and there is no evidence of malingering, the ALJ can only reject plaintiff's testimony regarding the severity of his symptoms for specific, clear and convincing

1  reasons. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014) (*citing Lingenfelter v.*

2  *Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).

3       "Contradiction with the medical record is a sufficient basis for rejecting the

4  claimant's subjective testimony."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d

5  1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th

6  Cir.1995)). But an ALJ may not reject a claimant's subjective symptom testimony "solely

7  on a lack of objective medical evidence to fully corroborate the alleged severity of pain."

8  *Bunnell v. Sullivan,* 947 F.2d 341, 345 (9th Cir. 1991); *Byrnes v. Shalala*, 60 F.3d 639,

9  641-42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). The ALJ

10  must not cherry-pick medical records; the ALJ is required to consider a particular record

11  of treatment in light of the overall diagnostic record. *Ghanim v. Colvin,* 763 F.3d at 1164.

12       Regarding migraine headaches, the record supports plaintiff's statements and

13  testimony. The ALJ erred by finding plaintiff was not credible with respect to headache

14  symptoms and limitations.

15       Plaintiff testified she had been having migraine headaches 20 percent of the

16  time. AR 196. She stated that medical professionals did not figure out what it was; she

17  characterized the headaches as "bad" but not as frequent as she had previously

18  experienced. AR 196. She stated the frequency was about three times each week. AR

19  196. The migraines would last five to six hours. AR 196. She stated that she took a

20  muscle relaxer three times each day, for migraines. AR 196-197. Plaintiff reported

21  severe headaches to physicians and mental health professionals starting in June 2016.

22  AR 522 (plaintiff describes chronic headaches, with nausea). At an appointment on 9-7-

23  2016 with ARNP Megan Rehder, plaintiff said she had migraines several times each

24

25

week with vomiting. AR 1110, 1265. Plaintiff was hospitalized with meningitis/enterovirus headaches in August 2016 (AR 756-757, notes of Dr. Hoang Dang, M.D.); she had a drug use relapse in late 2018, and a psychotic episode apparently relating to drug use in early 2019. AR 533-536, 717-726, 881-886. In October 2018, she presented at the emergency room with an altered mental state, having visual and auditory hallucinations, balance problems resulting in multiple falls, she was filthy, disheveled, smelled of urine, was slurring her speech, and responding slowly to questions. AR 732-734 (notes of Dr. Lorich).

In appointments with Nancy Armstrong, ARNP, during February 2019, plaintiff described worsening headaches, "[b]urning; aching; throbbing; tightness; pain; piercing/stabbing (lacinating)." AR 680-682. Plaintiff told ARNP Armstrong the headaches were continuous, severe and constant, aggravated by loud noise, occurred every other day, with nausea, double vision, dizziness – plaintiff thought they might be related to neck pain. *Id.* Severe headaches with dizziness, nausea, hallucinations, and balance problems, were also reported by plaintiff on August 25, 2019, during an urgent care appointment with Dr. Joonis Abdulkhader, MD and Cindy Sawyer, RN. AR 1186. Dr. Abdulkhader suggested some of this might have been a drug side effect of an increased dosage of Cymbalta.

The ALJ stated that plaintiff did not report any ongoing headache symptoms between 2016 and 2021. AR 33. This finding is not supported by the record – although plaintiff reported headaches frequently starting in early 2016, there is a gap in specific discussion of migraines between the latter part of 2016 and the beginning of 2019. Yet, as stated above, the plaintiff was dealing with multiple mental and physical conditions,

medication management problems, she was trying to overcome an opioid addiction, and she had a precarious living situation. The lack of specific discussion of, or treatment for, migraines between late 2016 and early 2019 is not explained in the record, yet the ALJ drew an unreasonable inference, unsupported by substantial evidence, that plaintiff experienced no headache problems during that period.

To establish disability under the Social Security Act, plaintiff would need to show she had an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). By discounting plaintiff's testimony and statements about debilitating headaches, even though plaintiff's assertions are supported by medical records showing headache symptoms and limitations during 2016 and again during 2018-2019, the ALJ harmfully erred. The RFC included a limitation about noise -- but the RFC does not include nausea, double vision, vomiting, dizziness, frequent falls, or the other limitations and symptoms that plaintiff testified to and made statements about to ARNP Armstrong (AR 678-682, clinical summary dated 2-7-2019) and other treatment providers in the medical records.

An ALJ may discount a claimant's testimony based on daily activities that either contradict their testimony or that meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Plaintiff's activities were minimal – she stated she could spend time with family, keep herself clean, shop for food and eat, but did not engage with sports or any rigorous exercise, and there is no basis for finding she lacked credibility due to her daily activities. AR 198-202. *See Fair v. Bowen*, 885 F.2d 597, 603

(9th Cir. 1989) (claimants need not be "utterly incapacitated to be eligible for benefits," and noting "many home activities are not easily transferable to what may be the more grueling environment of the workplace").

As for plaintiff's other conditions, the ALJ accurately determined that plaintiff's testimony about her mental health and physical conditions – except for headaches and additional symptoms and limitations such as nausea and vomiting associated with the headaches -- was inconsistent with her previous statements, and inconsistent with the medical record. First, during the hearing, plaintiff alleged that she stopped working in May of 2016 because of pain from fibromyalgia. AR 195-196. Yet she told others that she stopped working because substance use affected her job performance, caused her to be unproductive, and absent from work. AR 35, 527, 626. The ALJ therefore justifiably found that her statements were unreliable regarding the nature of her fibromyalgia conditions and symptom severity.

In addition, there are medical records that show she continued to have a substance use disorder and had a relapse in late 2018 (AR 533-536, 717-726 – brought to the hospital for treatment after taking meth), but she indicated to Dr. Lewis in February 2019 that she had been clean and sober for three years (AR 545). The treatment records show that she was quite successful, overall, with substance use disorder treatment. See, e.g., AR 1647-1682. And, even though she struggled with mental health conditions such as PTSD, anxiety, and depression, plaintiff's care providers worked with her to manage medications and counseling; the record shows the symptom management was consistent, despite a downturn in December 2018 (hospitalized for drug use and psychosis) and a severe trauma in May 2019

(hospitalized for sexual assault). See e.g., AR 1133-1147, 1197-1198, 1223-1224, 1295-1359, 1524-1526, 1550-1646.

The ALJ erred by drawing the inference that plaintiff was purposefully not attending appointments (AR 33 – "the claimant's treatment history was notable for non-compliance"). There is nothing in the record to suggest that she decided against going to mental health treatment appointments or did not cooperate with treatment; instead, the record shows she was homeless at times during the relevant period and struggled with multiple pharmacological interventions to manage complicated and overlapping medical conditions. The fact that she was able to maintain drug treatment on methadone but was not able to keep up with some other physical and mental health challenges, does not support the ALJ's finding of lack of credibility. But this error is harmless, because the ALJ had another reason to find she lacked credibility as to mental health symptoms and physical conditions -- inconsistency with the medical record -- that is supported by substantial evidence in the record.

Therefore, the ALJ's decision finding that plaintiff's testimony and statements were unreliable – as to all conditions except migraines -- is supported by substantial evidence and at least one legally valid reason. *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162-1163 (9th Cir. 2008).

The ALJ's decision is reversed and remanded for additional proceedings, because the vocational expert testified that if the individual required ongoing training, or if they were off-task 10% of the time or missed more than one day of work per month, any of these limitations would preclude any competitive full-time work. AR 213-215. If the additional limitations and symptoms relating to plaintiff's headaches were

incorporated into the RFC, then the assessment of whether plaintiff meets the criteria

for disability may change. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219,

1228 (9th Cir. 2008).

### 3. Lay witness evidence

Plaintiff alleges error because the ALJ did not evaluate evidence from SSI Facilitator

Cindy Harbaugh, dated March 5, 2019. Dkt. 18, at 9. Ms. Harbaugh stated that plaintiff

was having difficulty reading, understanding, being coherent, concentrating, talking,

answering, sitting, standing, walking, or writing. When Ms. Harbaugh interviewed

plaintiff, she noted plaintiff was easily distracted, easily redirected, and appeared to

experience pain while sitting, standing up, or walking. AR 420.

For applications filed on or after March 27, 2017, such as this one, an ALJ is "not

required to articulate" how he or she evaluated evidence from non-medical sources

such as educational personnel, public and private social welfare agency personnel, and

other lay witnesses. 20 C.F.R. § 404.1502(e). If the testimony of a lay witness conflicts

with the plaintiff's medical record, the testimony may be discounted. *Vincent v. Heckler,*

739 F.2d 1393, 1395 (9th Cir. 1984). If the lay testimony does not describe any different

limitations than already described by plaintiff's statements during the hearing or in other

documents, then any error the ALJ may have committed by not even mentioning the lay

witness would be harmless. *See, Molina v. Astrue,* 674 F.3d 1104, 1117 (9th Cir. 2012)

*superseded on other grounds by* 20 C.F.R. § 404.1502(a).

In this case, the Court finds the ALJ did not commit harmful error by failing to

consider the lay witness evidence. The statements of SSI Facilitator Cindy Harbaugh

are similar to plaintiff's testimony and statements about her fibromyalgia and other

physical limitations. For the same reason the Court finds no error by the ALJ with respect to plaintiff's credibility concerning fibromyalgia and other physical conditions (other than headache symptoms), error, if any, was harmless with respect to the lay witness evidence.

CONCLUSION

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Court concludes that the record is not free from important and relevant conflicts, such as whether the medical records and plaintiff's statements and testimony show she would meet the criteria for disability due to headaches and associated symptoms such as vomiting, cognitive disorientation, dizziness, and balance problems. Therefore, this matter is reversed for further administrative proceedings, including a *de novo* hearing. If the additional limitations and symptoms relating to plaintiff's headaches were incorporated into the RFC, then the assessment of whether plaintiff meets the criteria for disability may change. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2008).

1    Based on the foregoing discussion, the Court concludes the ALJ improperly

2  determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and

3  remanded for further administrative proceedings.

4

5    Dated this 30th day of November, 2023.

6

7    *Theresa L. Fricke*

    Theresa L. Fricke
8    United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25